C. Richard Newsome (Bar Number: 827258)
**NEWSOME MELTON, PA**
201 S. Orange Avenue, Suite 1500
Orlando, Florida 32801
Tel: 407.648.5977 /Fax: 407.648.5282
Newsome@NewsomeLaw.com
GillenTeam@NewsomeLaw.com

Glenn J. Holzberg (Bar Number: 369551)
Louis M. Holzberg (Bar Number:1011340)
**HOLZBERG LEGAL**
Offices at Pinecrest II
7685 SW 104th Street, Suite 220
Miami, Florida 33156
Tel: (305) 668 6410
Glenn@HolzbergLegal.com
Louis@Holzberglegal.com

John H. Gomez, Esq. (CA SBN 171485)
Jeremiah A. Lowe, Esq. (CA SBN 239166)
Victoria J. Lazar, Esq. (CA SBN 298668)
**GOMEZ TRIAL ATTORNEYS**
655 W. Broadway, Suite 1700
San Diego, California  92101
Tel:  (619) 237-3490/ Fax: (619) 237-3496
John@thegomezfirm.com
Jeremiah@thegomezfirm.com
Vlazar@thegomezfirm.com
*Pro Hac Vice Pending*

*Attorneys* for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JAMES NEVIS, an individual, KELEA NEVIS, an individual,<br><br>          Plaintiffs,<br><br>   vs.<br><br>COSTA CROCIERE S.P.A., COSTA CRUISE LINES, INC., and DOES 1 to 50,<br><br>        Defendants. | **CASE NO.**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(1) NEGLIGENCE;**<br>**(2) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**<br>**(3) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>**(4) NEGLIGENT MISREPRESENTATION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs JAMES NEVIS and KELEA NEVIS, (hereinafter "Plaintiffs") by and through their attorneys, hereby allege on personal information as to themselves, and on information and belief as to all others, as follows:

<u>**PARTIES**</u>

1.      Plaintiff JAMES NEVIS is a citizen of the United States, is a resident of Maricopa County, Arizona, and was a passenger on Defendants COSTA CROCIERE S.P.A. and COSTA CRUISE LINES INC.'s *Costa Luminosa* cruise out of Fort Lauderdale, Florida on February 24, 2020.

2.      Plaintiff KELEA NEVIS is a citizen of the United States, is a resident of Maricopa County, Arizona, and was a passenger on Defendants COSTA CROCIERE S.P.A. and COSTA CRUISE LINES INC.'s *Costa Luminosa* cruise out of Fort Lauderdale, Florida on February 24, 2020.

3.      Plaintiffs are informed and believe that Defendant COSTA CROCIERE S.P.A. is, and at all relevant times herein was, a corporation incorporated under the laws of Italy with its principal place of business in Genoa, Italy, and doing business in Florida at 880 SW 145th Avenue, Suite 102 Pembroke Pines, FL 33027.

4.      Plaintiffs are informed and believe that Defendant COSTA CRUISE LINES INC. is, and at all relevant times herein was, a Florida Corporation with its principal place of business in Pembroke Pines, Florida.

5.      Plaintiffs are informed and believe that Defendant COSTA CRUISE LINES INC. is a wholly owned subsidiary of Defendant COSTA CROCIERE S.P.A.

## JURISDICTION AND VENUE

6.      Venue is proper in the United States District Court for the Southern District of Florida under 28 U.SC. § 1391(a), (b)(1) and (b)(2) because Defendants COSTA CROCIERE S.P.A. and COSTA CRUISE LINES INC. (hereinafter "COSTA CRUISE") maintain a principal place of business in Pembroke Pines, Florida, and a substantial part of the events or omissions giving rise to this claim occurred in this Judicial District.

7.   This is an action for damages in excess of $1,000,000, which exceeds this Court's minimum jurisdictional requirements of $75,000, exclusive of all interests and costs. This Court has jurisdiction based on USC §1333 and under general maritime law of the United States.

8.      COSTA CRUISE, at all times material, personally or through an agent;

a.      Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

b.      Was engaged in substantial activity within this state;

c.      Operated vessels in the waters of this state;

d.      Committed one or more of the acts stated in Florida Statutes, Sections 48.081,48.181 or 48.193;

e.      The acts of COSTA CRUISE set out in this Complaint occurred in whole or in part in this county and/or state;

f.      COSTA CRUISE was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard the vessel, *Costa Luminosa*.

9.      COSTA CRUISE is subject to the jurisdiction of the Courts of this state.

10.     The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

11.     At all times material hereto, COSTA CRUISE owned, operated, managed, maintained and/or controlled the vessel, *Costa Luminosa*.

12.     COSTA CRUISE's Passage Ticket Contract contains a contractual provision which attempts to limit its passengers' rights by forcing them to file their claims against COSTA CRUISE in the courts of Genoa, Italy. This forum selection clause is void and/or invalid as it is fundamentally unfair under the circumstances for the following reasons:

a.     Said provision is in violation of 46 U.S.C. §30509 (a)(1)(B), which states: "(a)Prohibition.— (1) In general.—The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting — (B) the right of a claimant for personal injury or death to a trial by court of competent jurisdiction." Here, the subject voyages transported passengers between a port in the United States and a port in a foreign country, statutorily barring the application limiting the right of a claimant for personal injury or death to a trial by this court – a court of competent jurisdiction.

b.     Furthermore, this forum selection clause is void and/or invalid because it is fundamentally unfair to require Plaintiffs to file their claims in Genoa, Italy. *See Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). Plaintiffs joined the subject voyage in Florida as its place of embarkation. It is fundamentally unfair to force Plaintiffs to bring their claim(s) in Italy. This argument is strengthened by the fact that Genoa, Italy is on a national lockdown—closed for all nonessential business, including hotels—and is one of the epicenters of the coronavirus global pandemic. Flights to Italy have been cancelled by numerous major airlines. It would be unduly inconvenient and fundamentally unfair to require Plaintiffs, who are now suffering from the dangerous coronavirus, to travel across the world and into an area where hospitals are overrun and unable to care for their own citizens due to the Coronavirus outbreak. Accordingly, the forum selection clause should be invalidated as Plaintiffs would be deprived of their day in court because of inconvenience and unfairness. *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998).

13.     All conditions precedent to the institution of this action have been satisfied, or otherwise excused, including the pre-suit notice required by the terms and conditions of Defendants' cruise ticket.  (See notice letter attached as Exhibit "A").

### GENERAL ALLEGATIONS COMMON TO ALL COUNTS

14.     This case involves COSTA CRUISE (a) knowingly and intentionally proceeded with a cruise voyage on February 24, 2020 knowing that other cruises, such as the Diamond Princess cruise ship, experienced a serious Coronavirus outbreak in early February 2020. COSTA CRUISE proceeded with its February 24, 2020 voyage, despite the United States Centers for Disease Control and Prevention's February 18, 2020 statement and criticism of the Diamond Princess cruise ship's conduct and response to its Coronavirus outbreak resulting in over 710 confirmed cases; (b) knowingly and intentionally concealed from passengers that a passenger on its February 24, 2020 voyage had symptoms of the Coronavirus necessitating medical evacuation; and (c) knowingly and intentionally failed to order passengers to isolate in their staterooms. In so doing, COSTA CRUISE subjected its passengers on its February 24, 2020 voyage to the highly contagious Coronavirus, and exposed passengers to actual risk of immediate physical injury and death.

15.     This case further involves COSTA CRUISE's (a) knowing and intentional decision to proceed with a transatlantic 20-day cruise on March 5, 2020, knowing at least one of its passengers from the prior voyage who was evacuated early on February 29, 2020 had symptoms of coronavirus; (b) knowing and intentional decision to conceal from passengers that a passenger on the *Costa Luminosa* had symptoms of coronavirus that necessitated a medical evacuation; (c) knowing and intentional decision to wait two additional days to order passengers to isolate in their staterooms after being informed that another passenger who disembarked in Puerto Rico with symptoms of coronavirus tested positive for such; and (d) knowing that crewmembers on the *Costa Luminosa* had been exposed to Coronavirus and were likely suffering from symptoms, while serving passengers without PPE. In so doing, COSTA CRUISE subjected over 2,000 passengers, and crew who were

required to serve passengers throughout the voyage, to further risk of spreading of the contagion, and exposed passengers to actual risk of immediate physical injury and death.

16.     This case further involves COSTA CRUISE's failure to take reasonable precautions to contain the outbreak of coronavirus among passengers and crew members on the *Costa Luminosa,* placing passengers and the general public at risk of infection.

17.     As a direct and proximate cause of COSTA CRUISE's negligence, plaintiffs James Nevis and Kelea Nevis suffered physical and emotional injuries.

## FACTUAL ALLEGATIONS SURROUNDING THE CRUISE INDUSTRY AND THE CORONAVIRUS

18.     The Coronavirus Pandemic, also known as COVID-19, has affected millions worldwide. What began in December as an unknown illness in Wuhan, China, has become a deadly and invisible enemy to all individuals, and particularly to the elderly and immune-compromised. The virus spread quickly from China to countries in Europe, and eventually to the United States. There have been over one million cases worldwide, and over seventy-thousand deaths as a result of the Coronavirus.

19.     COSTA CRUISE and the cruise industry got an early warning of how easily the virus could spread on its massive ocean liners when the first cases emerged on the Diamond Princess, owned by Princess Cruise Lines ("Princess"), **which is owned by Carnival Corporation, like Costa**, in early February 2020 in Yokohama Harbor. The outbreak began with ten cases, and rapidly multiplied to over seven hundred cases, as a result of the flawed two-week quarantine on the ship. The Center for Disease Control (CDC) issued a statement on February 18, 2020 that "the rate of new reports of positives new on board [the Diamond Princess], especially among those without symptoms, highlights the high burden of infection on the ship and potential for ongoing risk." Seven of the Diamond Princess' passengers died as a result of COVID-19. In fact, Princess cruise lines during this voyage was already notifying it's passengers on the Diamond Princess of the outbreak of coronavirus, steps taken by the CDC to test passengers and to control the spread, all while making

arrangements to return to its homeport in Oakland CA to medically evacuate the most sick and symptomatic passengers.

20.     COSTA CRUISE and the cruise industry got another warning of how severe the virus could spread on cruise ships when the Grand Princess, owned by Princess, had an outbreak in late-February 2020 off the coast of California. Princess had knowledge that at least one of its passengers from a prior voyage, who disembarked on February 21, 2020, had symptoms of coronavirus. Yet the Grand Princess it made the conscious decision to proceed with the voyage that began on February 21, 2020, with another three thousand passengers on an infected ship. Prior to boarding the February 21, 2020 voyage on the Grand Princess, passengers were simply asked to fill out a piece of paper confirming they were not sick. Not one passenger was questioned, let alone examined in any capacity. As a result of Princess' lackadaisical approach to the safety of passengers and crew, 103 passengers tested positive for the coronavirus and two people have died so far.

21.     It would only stand to reason that knowing of these prior traumatic outbreaks on two of its sister company's vessels less than a month prior to the February 24, 2020 and March 5, 2020 voyages on the *Costa Luminosa*, that COSTA CRUISE would have learned to take all necessary precautions to keep its passengers, crew and the general public safe. This likely would have meant that the voyages, in their entirety, would have been cancelled (notably the entire global cruise industry was suspended roughly one week after the *Costa Luminosa* sailed on its March 5, 2020 voyage). Despite knowing full well of the tremendous risk faced by all the passengers (and crew) aboard, COSTA CRUISE set sail. And COSTA CRUISE did not take all reasonable and necessary precautions to keep its passengers, crew and the general public safe when it set sail and while at port. For this reason and those further stated herein, Plaintiffs and many others have contracted the Coronavirus and/or are now at an actual risk of immediate physical injury and death proximately caused by COSTA CRUISE's negligence

### FACTUAL ALLEGATITONS SURROUNDING THE CORONAVIRUS OUTBREAK ON THE *COSTA LUMINOSA* VOYAGES

22.     In late 2019, the CDC published the Interim Guidance for Ships on Managing

Suspected Coronavirus Disease 2019, which provided guidance for ships, including cruise ships, originating from, or stopping in, the United States to help prevent, detect, and medically manage suspected COVID-19 infections. With regard to managing sick passengers or crew when boarding and onboard, the CDC states: "Deny boarding of a passenger or crew member who is suspected to have COVID-19 infection based on signs and symptoms plus travel history in China or other known exposure at the time of embarkation." *See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

23.     COSTA CRUISE failed to deny boarding to passengers and/or crewmembers who showed symptoms of the Coronavirus and/or had a travel history in China or other known exposure at the time of embarkation, including but not limited to, Japan, Italy, and South Korea.

24.     On February 24, 2020, Plaintiffs and other passengers boarded the *Costa Luminosa* cruise ship in Fort Lauderdale, Florida, and set sail for the Caribbean on what would be for Plaintiffs a 30-day cruise.

25.     During the boarding process on February 24, 2020, COSTA CRUISE had non-medical professionals determine whether prospective passengers were medically fit to board based on a temperature screening and answers to whether they were sick and/or experiencing symptoms of the Coronavirus.

26.     On February 29, 2020, the *Costa Luminosa* docked in the Grand Cayman Islands where a 68-year-old Italian passenger was evacuated after experiencing symptoms of the coronavirus and a stroke. The passenger tested positive for Coronavirus and eventually passed away in March 2020.

27.     On March 4, 2020, the night before the *Costa Luminosa* was set to sail for another voyage, COSTA CRUISE sent the below email to prospective passengers, informing them that the alert level for COVID-19 declared by the World Health Organization had been raised leading to health authorities of some countries to further increase their precautionary measures by introducing a series of bans on entry into their territories; and as a result COSTA CRUISE

"remains in constant contact with all the local authorities of the countries called by its vessels…
to allow [COSTA CRUSIE] to make the **most appropriate decisions** and put in place the **most
adequate measures** to be sure that the **highest level of safety** for its guests and crewmembers
are met." As such, COSTA CRUISE represented to its passengers that it was holding itself to the
**highest standard of care** for passengers.

28.    COSTA CRUISE's March 4, 2020 communications also advised passengers that
Italy would not permit the ship to dock in Venice, and instead the cruise would end in Marseille,
France. Passengers were offered an onboard credit for the inconvenience.

29.    On March 5, 2020, the *Costa Luminosa* returned to Fort Lauderdale, Florida from
its February 24, 2020 voyage – the same voyage where a 68-year-old Italian passenger was
evacuated due to symptoms of the Coronavirus. Plaintiffs and other passengers remained on
board for the second leg of their cruise, the *Costa Luminosa*'s March 5, 2020 voyage. Hours after
docking in Fort Lauderdale COSTA CRUISE allowed new passengers to board the *Costa
Luminosa* without adequately sanitizing the ship including, but not limited to, incorporating UV
lights into the filtration systems and/or antimicrobial sanitizing equipment. In addition, COSTA
CRUISE did not have a third-party indoor environmental professional verify that common use
areas and surfaces of the vessel were reasonably safe for passengers and/or crewmembers.

30.    Before boarding the *Costa Luminosa* on March 5, 2020, passengers contacted
Defendants COSTA CRUISE over their concerns of the vessel's safety surrounding the coronavirus,
and change in itinerary. COSTA CRUISE assured passengers its vessel was not affected by the
coronavirus, was safe, and that there was no need for concern. In addition, COSTA CRUISE
instructed passengers that they would *not* be reimbursed if they cancelled their March 5, 2020 voyage
on the *Costa Luminosa*.

31.    Relying on COSTA CRUISE's assurances, passengers embarked on the *Costa
Luminosa* on March 5, 2020 for a transatlantic cruise. Puerto Rico was scheduled to be the first port-
of-call on March 8, 2020, before the *Costa Luminosa* would sail across the Atlantic Ocean for seven
days. However, COSTA CRUISE failed to inform passengers at any time prior to boarding and/or

while they were on board the *Costa Luminosa* that there was a significantly increased risk of exposure to COVID-19. If passengers were made aware of this significantly increased risk of exposure prior to boarding the ship in Fort Lauderdale, Florida, they would have never boarded the *Costa Luminosa*, and/or never contracted COVID-19

32.     During the boarding process on March 5, 2020, COSTA CRUISE again had non medical professionals determine whether prospective passengers were medically fit to board based on a prospective passenger's answers to whether they were sick and/or experiencing symptoms of the coronavirus.

33.     As should have been anticipated, a coronavirus outbreak occurred during the *Costa Luminosa's* voyage. The outbreak was considered so severe that the *Costa Luminosa* was denied entry to multiple different ports-of-call by the government of the respective countries due to how contagious, novel, and deadly the coronavirus is.

34.     On March 8, 2020, the *Costa Luminosa* docked in Puerto Rico where an elderly Italian couple was rushed from the vessel to a hospital on shore due to symptoms of the Coronavirus. This elderly couple came from, and were residents of, northern Italy where the coronavirus outbreak in Italy initiated and where it escalated the worst in Italy. The Coronavirus outbreak necessitated a total lockdown in Italy the same day the elderly couple was rushed to the hospital upon arriving in Puerto Rico with symptoms of the coronavirus. COSTA CRUISE, either knowingly or negligently, failed to inform passengers that a passenger disembarked in Puerto Rico as a result of the Coronavirus.

35.     Remarkably, on this same date, March 8, 2020, the CDC expressly warned "**U.S. citizens, particularly travelers with underlying health conditions, should not travel by cruise ship**." Passengers aboard the vessel were not advised of this warning and were not given an opportunity to leave the ship. Instead, they were dragged across the Atlantic in a ticking Coronavirus time bomb.

36.     Before arriving in Antigua, the *Costa Luminosa's* next scheduled port-of-call, the

*Costa Luminosa* was denied entry due to concerns of the coronavirus after COSTA CRUISE submitted its Maritime Health details—concerning passenger and crewmember's health status—to the government of Antigua and Barbuda.

37.     If passengers were made aware of this significantly increased risk of exposure prior to leaving Puerto Rico, they would have disembarked the *Costa Luminosa* in Puerto Rico on March 8, 2020. Instead, passengers were trapped on the vessel, and at an actual and significantly increased risk of exposure to the coronavirus, while it sailed across the Atlantic Ocean for seven days.

38.     COSTA CRUISE knowingly and intentionally decided to sail the *Costa Luminosa* across the Atlantic Ocean for seven days to the Canary Islands, knowing at least two passengers who previously disembarked its ship had symptoms of the Coronavirus.

39.     During its transatlantic sailing from Puerto Rico to the Canary Islands, COSTA CRUISE was informed that the man who disembarked the vessel on February 29, 2020, with symptoms of the Coronavirus had tested positive for the Coronavirus. In addition, COSTA CRUISE was informed that the elderly couple with symptoms of the coronavirus who disembarked in Puerto Rico on March 8, 2020, tested positive for coronavirus. COSTA CRUISE waited nearly a full day to inform passengers that the aforementioned passengers tested positive for the coronavirus. During and after this revelation, COSTA CRUISE did not instruct passengers to isolate and/or quarantine to avoid the known and significant actual risk of contracting the coronavirus as passengers were allowed unfettered access to the casino, pools, gym, spa, bars and buffets the entire time, which further put passengers at an actual risk of exposure to Coronavirus. COSTA CRUISE's actions and/or omissions were in direct violation of CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019, revised on February 18, 2020. Again, COSTA CRUISE failed to inform passengers that there was a significantly increased and actual risk of exposure to Coronavirus on board the vessel

40.     With regard to managing passengers and crew after exposure, the CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019 states:

> "Passengers and crewmembers who have had high-risk exposures to a person suspected of having COVID-19 should be quarantined in their cabins. All potentially exposed

passengers, cruise ship medical staff, and crew members should self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure."

*See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020)

https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

41.     On March 13, 2020, the Governor of Puerto Rico confirmed its first coronavirus cases were the Italian couple who disembarked the *Costa Luminosa* on March 8, 2020. *See* The Associated Press, *Puerto Rico Announces its First Confirmed Coronavirus Cases*, ABC NEWS, (published March 13, 2020), https://abcnews.go.com/Health/wireStory/puerto-rico-announces-confirmed-coronavirus-cases-69593953.

42.     However, COSTA CRUISE waited nearly a whole day before informing passengers that the couple who disembarked in Puerto Rico tested positive for COVID-19**.** On March 14, 2020, at around 11:50PM, COSTA CRUISE slid a letter under passengers' stateroom doors informing passengers that the Italian couple who disembarked in Puerto Rico had tested positive for COVID-19 and were hospitalized as a result of the virus.

43.     During the voyage, additional passengers became seriously ill with symptom of the Coronavirus. COSTA CRUISE failed to recognize the seriousness of these passengers' medical condition. COSTA CRUISE did not instruct passengers and/or crew members who had exposure to a person suspected of having COVID-19 and/or tested positive for COVID- 19 to quarantine in their cabins as to avoid the known and significant actual risk of contracting the coronavirus. COSTA CRUISE continued to allow passengers with unfettered access to the casino, pools, gym, spa and buffets the entire time, which further put passengers at an actual risk of exposure to Coronavirus. These actions and/or omissions by COSTA CRUISE were in direct violation of CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019, revised on February 18, 2020.

44.     On March 15, 2020, the *Costa Luminosa* arrived in the Canary Islands to unload three more passengers with symptoms of the Coronavirus, However, COSTA CRUISE did not allow other passengers off the vessel. This was the first day the crewmembers of the *Costa Luminosa* began

wearing napkins over their mouths and using napkins to grab plates to deliver food into passengers' staterooms. Again, COSTA CRUISE did not inform and/or warn passengers that passengers on board the same voyage tested positive for the coronavirus

45.     Finally, on the evening of March 15, 2020, the captain of the *Costa Luminosa* asked passengers to remain isolated in their staterooms. COSTA CRUISE's quarantine recommendation came two days after COSTA CRUISE learned that the passenger who disembarked with symptoms of the coronavirus in Puerto Rico on March 8, 2020 tested positive for the Coronavirus.

46.     On March 16, 2020, the captain of the *Costa Luminosa* advised passengers they would be forced to quarantine for the remainder of the cruise due to the Coronavirus outbreak on the ship.

47.     On March 19, 2020, the *Costa Luminosa* was allowed entry in Marseille, France to allow for disembarkation of passengers. When passengers were instructed to leave their staterooms to meet at disembarkation areas aboard the vessel for further directions, they were not provided with any protective equipment, such as adequate masks or gloves, and not directed to stay six feet apart, which further put passengers at an actual, heightened risk of exposure to the Coronavirus. During the disembarkation process in Marseille, France, passengers, bunched in tight groups, were unloaded off the vessel and onto buses and held for hours before flights were arranged for passengers based on their country of residence. At this point, thirty-six of the seventy-five passengers tested positive for COVID-19.

48.     As a result of Defendant COSTA CRUISE's grossly negligent approach to the safety of the passengers on board the *Costa Luminosa*, its passengers and crew aboard the *Costa Luminosa* were at an actual risk of immediate physical injury and death.

49.     Consequently, thousands of passengers on the *Costa Luminosa* were subjected to the risk of contracting the highly contagious Coronavirus as a result of Defendant COSTA CRUISE's failure to warn passengers at any time prior to boarding or while they were already onboard that there were other passengers with symptoms of the Coronavirus, and Defendant COSTA CRUISE's grossly negligent approach to the safety of the passengers.

50.     As a result of COSTA CRUISE's actions and/or omissions, Plaintiffs and other passengers were forced to board a plane where they were further exposed to an actual risk of physical injury and forced to quarantine for over two weeks, some of which had high fevers, dry coughs, shortness of breath, and a serious risk of imminent death– all of which could have been easily avoided if passengers were simply given the choice to stay at home and reschedule the cruise and/or cancelled the subject cruise and/or implemented reasonable policies and procedures to prevent the spread of the highly contagious Coronavirus.

51.     COSTA CRUISE's misconduct was knowing, willful, wanton, and intentional because it was predicated on a profit motive. Simply put: cruise lines like COSTA CRUISE make no money when passengers don't sail. The Costa Luminosa set sail knowing it was a virtual certainty that there would be an outbreak, similar, if not identical, to those which two Princess ships had already very publicly faced. COSTA CRUISE must answer for its willful, wanton, and intentional disregard for the safety and well-being of its passengers. Accordingly, Defendant COSTA CRUISE's knowing, willful, wanton, and intentional misconduct subjects COSTA CRUISE to the imposition of punitive damages.

52.     To this precise point, Katelyn Gostic, a University of Chicago epidemiologist, stated the following on COSTA CRUISE's response with regards to the voyage(s) aboard the *Costa Luminosa*: "The cruise ship response was definitely lagging behind expert opinion on how big the risks are… It was sluggish decision-making, and they should have responded earlier." *See* Beth Reinhard, Rosalind S. Helderman, Faiz Siddiqui, and Mark Berman, *Cruise Ships Kept Sailing As Coronavirus Spread. Travelers and Health Experts Question Why*, WASHINGTON POST, (last updated March 20, 2020), https://www.washingtonpost.com/politics/cruise-ships-kept-sailing-as-coronavirus-spread-travelers-and-health-experts-question-why/2020/03/20/5b640f14-67e2-11ea-b5f1-a5a804158597_story.html.

53.     Each and all of the foregoing conditions, including but not limited to, the actual risk of exposure to the coronavirus, were known to COSTA CRUISE prior to the time the *Costa Luminosa* set for sail on its voyages on February 24, 2020 and March 5, 2020, and prior to leaving

Puerto Rico on March 8, 2020. Defendant COSTA CRUISE subjected its passengers to the highly contagious coronavirus, and exposed passengers to actual risk of immediate physical injury and death due to its (a) knowing and intentional decision to proceed with its February 24, 2020 voyage after having received early warnings of how easily the virus could spread on ocean liners, CDC criticism of other cruise lines with Coronavirus outbreaks, and the Princess cruise outbreaks; (b) knowing and intentional decision to proceed with its March 5, 2020 voyage, knowing at least one of its passengers from the prior voyage who disembarked February 29, 2020 had symptoms of coronavirus; (c) knowing and intentional decision to conceal from passengers that a passenger on the subject voyage had symptoms of coronavirus, and did not inform passengers until after the day the *Costa Luminosa* docked in Puerto Rico—the last chance passengers had to disembark before being stuck on the *Costa Luminosa* for a full week while sailing across the Atlantic Ocean with severely limited medical personnel and supplies; and (d) knowing and intentional decision to wait two days to order passengers to isolate in their staterooms after being informed that the passengers who disembarked in Puerto Rico with symptoms of coronavirus tested positive.

### FIRST CAUSE OF ACTION FOR NEGLIGENCE
**[Plaintiffs JAMES NEVIS and KELEA NEVIS Against All Defendants]**

54.     Plaintiffs re-allege each and every allegation contained in the preceding and subsequent paragraphs and by this reference incorporates said paragraphs as though fully set forth herein.

55.     It was the duty of Defendant COSTA CRUISE to provide Plaintiffs, as paying passengers, with reasonable care under the circumstances to protect plaintiffs from being exposed to unreasonable risk of harm from COVID-19 during the cruise. Additionally, and/or Alternatively, Defendant COSTA CRUISE voluntarily assumed a heightened (or "highest") duty of care to its passengers (See paragraph 27.).

56.     COSTA CRUISE and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances.

57.     Plaintiffs were injured due to the fault and/or negligence of Defendant COSTA CRUISE, and/or its agents, servants, and/or employees as follows:

a.      Failure to use reasonable care to provide and maintain a safe voyage for Plaintiffs, fit with proper and adequate safety, protection, cleaning products and equipment, especially during a known and escalating, global pandemic of the Coronavirus, and passengers showed symptoms of the Coronavirus, and care; and/or

b.      Failure to adequately warn passengers before boarding the vessel on February 24, 2020, that COSTA CRUISE had received warnings about the high risk of the spread of Coronavirus on cruise liners; and/or

c.      Failure to warn passengers of the dangers and risk of the Coronavirus and/or infections disease, including but not limited to failing to warn passengers or take precautionary quarantine measures after evacuating the elderly passenger on February 29, 2020 with symptoms of the Coronavirus; and/or

d.      Failure to warn passengers of the dangers and risks of the coronavirus and/or infectious disease, including, but not limited to, failing to inform the passengers of the extent of the prior outbreaks and/or risks and/or symptoms; and/or

e.      Failure to adequately warn passengers before boarding the vessel on February 24, 2020 and March 5, 2020, that the vessel's medical facility, including the medical personnel, equipment, and supplies, would not be able to adequately handle a coronavirus outbreak onboard the *Costa Luminosa*, knowing that countries were refusing the vessel's entrance and passengers with symptoms to come onshore; and/or

f.      Failure to adequately warn passengers on the March 5, 2020 voyage aboard the *Costa Luminosa* that during the voyage a passenger showed symptoms of the coronavirus and/or came from an area (Italy) before boarding the vessel that was experiencing a massive outbreak of the coronavirus and placed on a lockdown by the government due to the severity of the coronavirus; and/or

g.      Failure to adequately examine a passenger's and/or crewmember's health condition before allowing them to board the vessel for the  February 24, 2020 and March 5, 2020 voyages; and/or

h.　　Failure to have adequate medical personnel during the boarding process for the February 24, 2020 and March 5, 2020 voyages to determine whether to allow boarding to passengers and/or crewmembers; and/or

i.　　Failure to have adequate medical personnel to determine whether to allow passengers and/or crewmembers to board in accordance with CDC guidelines; and/or

j.　　Failure to adequately sanitize and/or disinfect the vessel's common areas and passenger's cabin; and/or

k.　　Failure to adequately sanitize and/or disinfect plates, cups, food trays, utensils, ice machines and drinking fountains; and/or

l.　　Failure to quarantine passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

m.　　Failure to quarantine passengers and/or crewmembers infected with the Coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

n.　　Failure to provide prompt, proper, and adequate medical treatment to passengers infected with the Coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

o.　　Failure to serve uncontaminated food; and/or

p.　　Failing to practice safe and sanitary food practices; and/or

q.　　Failure to adequately and properly eradicate the Coronavirus or some other virus causing illness to passengers on the *Costa Luminosa*; and/or

r.　　Failure to take adequate steps to prevent an outbreak of the Coronavirus and/or virus and/or infectious disease when it knew or should have known that such outbreaks had occurred on other cruise liners and prior cruise voyages, and despite CDC warnings; and/or

s.      Failure to take adequate medical precautions when a passenger is exhibiting symptoms of the Coronavirus and/or virus and/or infectious disease so that it can be timely diagnosed; and/or

t.      Failure to perform testing on ill passengers to confirm the type and nature of the virus; and/or

u.      Failure to have adequate policies and procedures in place to manage and contain the outbreak and spread of the Coronavirus and/or virus and/or infectious disease; and/or

v.      Failure to provide a sanitary vessel to prevent outbreaks of the Coronavirus and/or virus and/or infectious diseases, including, but not limited to, inadequate and/or ineffective cleaning/sanitary procedures and/or lack of equipment and supplies; and/or

w.      Failure to take adequate steps to contain the spread of the Coronavirus and/or virus and/or infectious diseases, which it knew or should have known could cause other dangerous medical conditions; and/or

x.      Knowingly refusing to cancel and/or offer refunds to passengers as a result of a passenger on a prior cruise showing symptoms of coronavirus and having to be medically disembarked; and/or

y.      Failing to have proper policies and procedures in place to determine whether to offer refunds as a result of the risk of exposing passengers and crew to the highly contagious Coronavirus due to a passenger on a prior cruise showing symptoms of Coronavirus; and/or

z.      Failing to cancel the voyage and/or offer refunds despite knowing a passenger on a prior voyage showed symptoms of the Coronavirus and despite knowing that multiple prior similarly situated voyages ended in widely publicized catastrophe; and/or

aa.      Failure to reasonably offer refunds to passengers not wishing to travel on a cruise liner in light of the growing concern worldwide for the Coronavirus and publicized outbreaks of Coronavirus on other cruise ships; and/or

bb.     Failure to reasonably offer refunds to passengers not wishing to travel on a cruise liner that had a passenger from the February 24, 2020 voyage showing symptoms of the Coronavirus; and/or

cc.     Exposing passengers to unsanitary conditions that they were unprepared for without proper warning from COSTA CRUISE; and/or

dd.     Failure to provide adequate training, instruction, and supervision to Defendant COSTA CRUISE's employees; and/or

ee.     Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

ff.     Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an outbreak of a virus and/or infectious disease, including , but not limited to, the Coronavirus; and/or

gg.     Failure to determine and/or appreciate the hazards associated with allowing passengers to congregate within close distances, including within six feet, in common areas of the vessel; and/or

hh.     Knowing, as a result of previous similar incidents and/or passengers showing symptoms of the Coronavirus, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and/or

ii.     Failure to amend its cancellation policy to allow the passengers to cancel their February 24, 2020 cruise without financial penalty in light of the growing concern worldwide, actual risk of the Coronavirus and publicized outbreaks of Coronavirus on other cruise ships; and/or

jj.     Failure to amend its cancellation policy to allow the passengers to cancel their March 5, 2020 cruise without financial penalty in light of a passenger from the February 24, 2020 voyage showing symptoms of the Coronavirus and/or the significant actual risk due to the Coronavirus global pandemic;

kk.      Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

58.      The above acts and/or omissions caused and/or contributed to Plaintiffs contracting the Coronavirus and/or other virus and/or medical complications arising from it because Plaintiffs would not have boarded the vessel knowing the actual risks to their health and safety known to COSTA CRUISE at the time they boarded the *Costa Luminosa* on February 24, 2020.

59.      The above acts and/or omissions caused and/or contributed to Plaintiffs contracting the Coronavirus and/or other virus and/or medical complications arising from it because Plaintiffs would not have remained on the *Costa Luminosa* knowing that a passenger on the February 24, 2020 voyage was disembarked for symptoms of the Coronavirus had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to Plaintiffs and other passengers.

60.      In addition, the above acts and/or omissions caused and/or contributed to Plaintiffs contracting the coronavirus and/or other virus and/or medical complications arising from it because Plaintiffs would have (a) disembarked the vessel in Grand Cayman knowing that a passenger on the voyage was disembarked in Grand Cayman for symptoms of the Coronavirus; or (b) disembarked the vessel in Puerto Rico knowing that a passenger on the voyage was disembarked in Puerto Rico for symptoms of the Coronavirus, had COSTA CRUISE and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to Plaintiffs.

61.      The above acts and/or omissions caused and/or contributed to the Plaintiffs and contracting the coronavirus and/or other virus and/or medical complications arising from it because the coronavirus and/or other virus outbreak would not have occurred but for Defendant's failure to adequately sanitize the vessel in a reasonably safe condition.

62.      At all material times, COSTA CRUISE had exclusive custody and control of the vessel, *Costa Luminosa*.

63.      COSTA CRUISE knew of the foregoing conditions causing Plaintiffs to be exposed

to an actual risk of physical injury and did not correct them, or the conditions existed for a sufficient length of time so that COSTA CRUISE, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

64.     As a result of the negligence of COSTA CRUISE, Plaintiffs:

a.     were exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, fever, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.     contracted the Coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiffs demand judgment for all damages recoverable under the law against COSTA CRUISE, including punitive damages, and demand trial by jury.

## SECOND CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### [On Behalf of Plaintiffs JAMES NEVIS and KELEA NEVIS against all Defendants]

65.     Plaintiffs re-allege each and every allegation contained in the preceding and subsequent paragraphs, and by this reference incorporates said paragraphs as though fully set forth herein.

66.     At all times material, due to the negligence and/or gross negligence and/or intentional

conduct of COSTA CRUISE, Plaintiff were placed in an immediate risk of physical harm. Said risk of physical harm included but is not limited to: contracting the Coronavirus and/or virus and/or medical complications arising from it and/or injury and/or death and/or severe emotional and/or psychological trauma.

67.     COSTA CRUISE's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties.

68.     Plaintiffs were forced to remain on a vessel that had multiple passengers that tested positive for Coronavirus and were on the vessel for multiple days, and were then forced to disembark the vessel in tight groups, creating an actual risk of exposure to the Coronavirus, causing a reasonable fear of great bodily harm and death. At all times material, Plaintiffs were in the zone of danger at risk of serious bodily harm, including death due to, *inter alia*, the highly contagious Coronavirus, which had and has no vaccine.

69.     Plaintiffs aboard the *Costa Luminosa* were placed in the zone of danger as a result of COSTA CRUISE's dangerously lackadaisical approach in dealing with the Coronavirus that was known to be on board the vessel via passengers that tested positive for the Coronavirus. Plaintiffs were in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

70.     Plaintiffs' fear of death and experience of mental, emotional and/or physical harm was genuine and well founded, and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of COSTA CRUISE. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by Plaintiffs including, but not limited to, insomnia, depression, anxiety, nightmares, and dizziness.

71.     As a result of the negligent infliction of emotional distress by COSTA CRUISE, Plaintiffs were:

a. exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b. contracted the Coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions there from, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiffs demand judgment for all damages recoverable under the law against COSTA CRUISE, including punitive damages, and demands trial by jury.

## THIRD CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### [On Behalf of Plaintiffs JAMES NEVIS and KELEA NEVIS against All Defendants]

72. Plaintiffs re-allege each and every allegation contained in the preceding and subsequent paragraphs, and by this reference incorporates said paragraphs as though fully set forth herein.

73. As set forth above, the actions of COSTA CRUISE were intentional and/or reckless and inflicted mental suffering. COSTA CRUISE's conduct in (a) proceeding with its February 24, 2020 voyage, despite the United States Centers for Disease Control and Prevention's February 18, 2020 statement and criticism of the Diamond Princess cruise ship's conduct and response to its Coronavirus outbreak resulting in over 710 confirmed cases; (b) knowingly and intentionally

concealing from passengers that a passenger on its February 24, 2020 voyage had symptoms of the Coronavirus necessitating medical evacuation; (c) knowingly and intentionally failing to order passengers to isolate in their staterooms; (d) deciding to proceed with a transatlantic 20-day cruise on March 5, 2020, knowing at least one of its passengers from the prior voyage who disembarked February 29, 2020 had symptoms of coronavirus; (e) deciding to conceal from passengers that a passenger on the subject voyage had symptoms of coronavirus, and did not inform passengers until after the day the *Costa Luminosa* docked in Puerto Rico—the last chance passengers had to disembark before being stuck on the *Costa Luminosa* for a full week while sailing across the Atlantic Ocean with severely limited medical personnel and supplies; and (f) deciding to wait two days to order passengers to isolate in their staterooms after being informed two days before that passengers who disembarked in Puerto Rico with symptoms of Coronavirus tested positive for such, was outrageous. This conduct is made more outrageous by the fact that this conduct was motivated by COSTA CRUISE desire to make profit rather than ensure the reasonable safety and welfare of its passengers.

74.     COSTA CRUISE's conduct caused Plaintiffs, and all those similarly situated, to suffer through the fearful conditions alleged above.

75.     All of the conditions previously alleged and endured by the Plaintiffs caused severe suffering and emotional distress as these conditions not only led to immediate risk of physical harm but also caused severe discomfort, anxiety, feelings of helplessness/hopelessness.

76.     The conduct of COSTA CRUISE as alleged above is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Put simply, COSTA CRUISE recklessly and intentionally put thousands of its passengers through a living nightmare so it could protect its bottom line.

77.     As a result of the intentional infliction of emotional distress by COSTA CRUISE, Plaintiffs:

a.      Were exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, fever, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.      contracted the Coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future

**WHEREFORE**, Plaintiffs demand judgment for all damages recoverable under the law against the COSTA CRUISE, including punitive damages, and demand trial by jury.

## **FOURTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION**
### **[On Behalf of Plaintiffs JAMES NEVIS and KELEA NEVIS against All Defendants]**

78.      Plaintiffs re-allege each and every allegation contained in the preceding and subsequent paragraphs, and by this reference incorporates said paragraphs as though fully set forth herein.

79.      On March 4, 2020, COSTA CRUISE made representations via email to prospective passengers which represented to prospective passengers that, with regard to COVID-19, COSTA CRUISE would "make the most appropriate decisions and put in place the most adequate measures to be sure that the highest level of safety for its guests and crewmembers are met" (see paragraph 27).

80.      In COSTA CRUISE's March 4, 2020 email to prospective passengers, COSTA CRUISE misrepresented the following:

       a.     That COSTA CRUISE would make the most appropriate decisions regarding COVID-19;and/or

       b.     That COSTA CRUISE would put in place the most adequate measures regarding COVID-19;and/or

       c.     That COSTA CRUISE would ensure that the highest level of safety for its guests and crewmembers are met regarding COVID-19.

81.     At all times material hereto, the foregoing statements COSTA CRUISE made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading.

82.     At all times material hereto, Plaintiffs justifiably relied on the representations made by COSTA CRUISE when Plaintiffs decided to board the *Costa Luminosa* on February 24, 2020, and remain onboard on March 5, 2020.

83.     As a result thereof, Plaintiffs:

       a.     Were exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

       b.     contracted the Coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiffs demand judgment for all damages recoverable under the law against the COSTA CRUISE, including punitive damages, and demand trial by jury

DATED:  April 14, 2020

*/s/ C. Richard Newsome*_____
C. Richard Newsome (Bar Number: 827258)
**NEWSOME MELTON, PA**
201 S. Orange Avenue, Suite 1500
Orlando, Florida 32801
Tel: 407.648.5977
Fax: 407.648.5282
Newsome@NewsomeLaw.com
GillenTeam@NewsomeLaw.com

Glenn Holzberg (Bar Number: 369551)
Louis M Holzberg (Bar Number: 1011340)
**LAW OFFICES  OF GLENN J. HOLZBERG**
Offices at Pinecrest II
7685 SW 104th Street, Suite 220
Miami, Florida 33156
Tel: (305) 668 6410
Glenn@HolzbergLegal.com
Louis@HolzbergLegal.com

Jeremiah A. Lowe, Esq. (CA SBN 239166)
*Pro Hac Vice Pending*
Victoria J. Lazar, Esq. (CA SBN 298668)
*Pro Hac Vice Pending*
**GOMEZ TRIAL ATTORNEYS**
655 W. Broadway, Suite 1700
San Diego, California  92101
Tel:  (619) 237-3490
Fax: (619) 237-3496
Jeremiah@thegomezfirm.com
Vlazar@thegomezfirm.com

Attorney for Plaintiffs James Nevis and Kelea Nevis