## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 0:20-cv-60759-RAR

JAMES NEVIS, an individual,
KELEA NEVIS, an individual,

      Plaintiffs,

v.

COSTA CROCIERE S.P.A., COSTA
CRUISE LINES, INC., and DOES
1 to 50,

      Defendants.

_____/

### DEFENDANTS' NOTICE OF RELATED OR SIMILAR ACTION

Defendants, pursuant to this S.D. Fla. L. R. 3.8, notify the Court that an action arising out

of the same subject matter as has been filed in the Southern District of Florida:

> *Paul Turner, on his own behalf and on behalf of all other similarly situated passengers aboard the Costa Luminosa, v. Costa Crociere S.p.A. and Costa Cruise Lines Inc.,* Case No. 20-cv-21481-KMM (S.D. Florida) [ECF 1]. A copy of the complaint is attached.

Pursuant to the above-referenced Local Rule, the foregoing constitutes a similar action filed prior

to this one and is based on the same subject matter.  The same or highly similar legal issues are

pending before that court.


Dated: July 21, 2020
      Miami, Florida

                                   Respectfully submitted,

                          By: */s/ Catherine J. MacIvor*_____
                              Jeffrey E. Foreman
                              Florida Bar No. 240310
                              jforeman@fflegal.com
                              Catherine J. MacIvor

Florida Bar. No. 932711
cmacivor@fflegal.com
Paul Bagley
Florida Bar. No. 94211
pbagley@fflegal.com
FOREMAN FRIEDMAN, PA
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6555
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on July 21, 2020. I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

By: */s/ Catherine J.  MacIvor*
Catherine J. MacIvor

## SERVICE LIST

*Nevis v. Costa Crociere S.P.A. and Costa Cruise Lines, Inc.*
*20-cv-60759-Ruiz*

Jeffrey E. Foreman, Esq.
Catherine J. MacIvor, Esq.
FOREMAN FRIEDMAN, P.A.
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6555
Facsimile: (305) 374-9077
jforeman@fflegal.com
cmacivor@fflegal.com

C. Richard Newsome, Esq.
NEWSOME MELTON, PA
201 S. Orange Avenue, Suite 1500
Orlando, FL 32801
Telephone: (407) 648-5977
Facsimile: (407) 648-5282
Newsome@NewsomeLaw.com
GillenTeam@NewsomeLaw.com

Glenn J. Holzberg, Esq.
Louis M. Holzberg, Esq.
HOLZBERG LEGAL
Offices at Pinecrest II
7685 SW 104th Street, Suite 220
Miami, FL 33156
Telephone: (305) 668-6410
Facsimile: (305) 667-6161
Glenn@HolzbergLegal.com
Louis@HolzbergLegal.com

John H. Gomez, Esq.
Jeremiah A. Lowe, Esq.
Victoria J. Lazar, Esq.
GOMEZ TRIAL ATTORNEYS
655 W. Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 237-3490
Facsimile: (619) 237-3496
John@thegomezfirm.com
Jeremiah@thegomezfirm.com
Vlazar@thegomezfirm.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

Paul Turner, on his own behalf
and on behalf of all other
similarly situated passengers
aboard the *Costa Luminosa*,

      Plaintiffs,

v.                                   **CLASS ACTION**

COSTA CROCIERE S.P.A., and
COSTA CRUISE LINES INC.,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Paul Turner, on his own behalf, and on behalf of all other similarly situated passengers aboard the *Costa Luminosa*, hereby sues Defendants, COSTA CROCIERE S.P.A., and COSTA CRUISE LINES INC., and for good cause alleges:

## JURISDICTION AND PARTIES

1.     Plaintiff, Paul Turner, is sui juris, is a resident of Wisconsin and citizen of the United States.

2.     Defendant COSTA CROCIERE S.P.A. is a corporation incorporated under the laws of Italy having its principal place of business in Genoa, Italy, and doing business in Florida at 880 SW 145th Ave, Suite 102 Pembroke Pines, FL 33027.

3.     Defendant COSTA CRUISE LINES INC. is a United States corporation having its principal place of business in Pembroke Pines, Florida. Defendant COSTA CRUISE LINES INC. is a wholly owned subsidiary of COSTA CROCIERE S.P.A.

4.     Defendants, COSTA CROCIERE S.P.A. and COSTA CRUISE LINES INC. are collectively referred to as "Costa."

5.      The matter in controversy exceeds the required amount, exclusive of interest and costs, and is a class action brought under this Honorable Court's jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  In the event that class status is not certified, then this matter is brought under the admiralty and maritime jurisdiction of this Honorable Court.

6.      Defendant, Costa, at all times material, personally or through an agent;

     a.  Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

     b.  Was engaged in substantial activity within this state;

     c.  Operated vessels in the waters of this state;

     d.  Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

     e.  The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

     f.  The Defendant was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard the vessel, *Costa Luminosa*.

7.      Defendant is subject to the jurisdiction of the Courts of this state.

8.      The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

9.      At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel, *Costa Luminosa*.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

10. Defendant Costa's Passage Ticket Contract contains a contractual provision which attempts to limit its passengers' rights by forcing them to file their claims against Costa in the courts of Genoa, Italy. This forum selection clause is void and/or invalid as it is fundamentally unfair under the circumstances for the following reasons:

   a. Said provision is in violation of 46 U.S.C. §30509 (a)(1)(B), which states: "(a) Prohibition.— (1) In general.—The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting — (B) the right of a claimant for personal injury or death to a trial by court of competent jurisdiction." Here, the subject voyages transported passengers between a port in the United States and a port in a foreign country, statutorily barring the application limiting the right of a claimant for personal injury or death to a trial by this court – a court of competent jurisdiction.

   b. Additionally, said provision does not apply to Plaintiff's claim that Costa failed to warn Plaintiff Paul Turner and all others similarly situated, that a passenger on a prior voyage was disembarked due to symptoms of the coronavirus because such negligence occurred before Plaintiff and all others similarly situated boarded the vessel on March 5, 2020 (the sailing date). Costa's own Passage Ticket Contract expressly states "[the Contract] is valid only for the Vessel, the accommodations and the sailing date specified herein."

   c. Furthermore, this forum selection clause is void and/or invalid because it is fundamentally unfair to require Plaintiff and others similarly situated aboard the *Costa Luminosa* to file their claims in Genoa, Italy. *See Krenkel v. Kerzner Int'l*

*Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). This proposed Class of persons includes numerous passengers from the United States who boarded the subject voyage in Florida. It is fundamentally unfair to force these persons to bring their claim(s) in Italy. This argument is strengthened by the fact that Genoa, Italy is on a national lockdown—closed for all nonessential business, including hotels—and is one of the epicenters of the coronavirus global pandemic. Flights to Italy have been cancelled by numerous major airlines. It would be unduly inconvenient and fundamentally unfair to require Plaintiff and others similarly situated, suffering from the dangerous coronavirus, to travel across the world and into an area where hospitals are overrun and unable to care for their own citizens due to the Coronavirus outbreak. Accordingly, the forum selection clause should be invalidated as Plaintiff and others similarly situated would be deprived of their day in court because of inconvenience and unfairness. *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998).

## <u>GENERAL ALLEGATIONS COMMON TO ALL COUNTS</u>

11.    This Class Action lawsuit involves Defendant Costa's (a) knowing and intentional decision to proceed with a transatlantic 20-day cruise on March 5, 2020, knowing at least one of its passengers from the prior voyage who disembarked February 29, 2020 had symptoms of coronavirus; (b) knowing and intentional decision to conceal from passengers that a passenger on the *Costa Luminosa* had symptoms of coronavirus that necessitated a medical evacuation; and (c) knowing and intentional decision to wait two days to order passengers to isolate in their staterooms after being informed that the passenger who disembarked in Puerto Rico with symptoms of coronavirus tested positive for such. In so doing, Costa subjected over 2,000 passengers to the

highly contagious coronavirus, and exposing passengers to actual risk of immediate physical injury and death.

**Factual Allegations Surrounding the Cruise Industry and the Coronavirus**

12.     In the recent months, there has been a worldwide outbreak of a new virus, the coronavirus, also known as COVID-19. The virus originated in China, and quickly spread throughout Asia, Europe, and most recently, North America. The coronavirus commonly causes fevers, a dry cough, shortness of breath, and can be fatal. There have been over one million cases worldwide and over seventy thousand deaths as a result of the coronavirus. Those fatalities have largely been amongst the elderly population, and those with underling medical complications.

13.     Costa and the cruise industry got an early warning of how easily the virus could spread on its massive ocean liners when the first cases emerged on the Diamond Princess, owned by Princess Cruise Lines ("Princess"), **which is owned by Carnival Corporation, like Costa**, in early February 2020 in Yokohama Harbor.  The outbreak began with ten cases, and rapidly multiplied to seven hundred cases, as a result of the flawed two week quarantine on the ship. The Center for Disease Control (CDC) issued a statement on February 18, 2020 that "the rate of new reports of positives new on board [the Diamond Princess], especially among those without symptoms, highlights the high burden of infection on the ship and potential for ongoing risk." Seven of the Diamond Princess' passengers died as a result of COVID-19.

14.     Costa and the cruise industry got another warning of how severe the virus could spread on cruise ships when the Grand Princess, owned by Princess, had a breakout in late February 2020 off the coast of California. Princess had knowledge that at least one of its passengers from a prior voyage who disembarked February 21, 2020, had symptoms of coronavirus, and yet it made the conscious decision to proceed with the voyage that began on February 21, 2020, with another three

thousand passengers on an infected ship. Prior to boarding the February 21, 2020 voyage on the Grand Princess, passengers were simply asked to fill out a piece of paper confirming they were not sick. Not one passenger was questioned, let alone examined in any capacity. As a result of Princess' lackadaisical approach to the safety of passengers and crew, 103 passengers tested positive for the coronavirus and two people have died so far.

15.     It would only stand to reason, that knowing of these prior traumatic outbreaks on two of its sister company's vessels less than a month prior to the subject voyage on the *Costa Luminosa*, that Costa would have learned to take all necessary precautions to keep its passengers, crew and the general public safe.  This likely would have meant that the voyage, in its entirety, would have been cancelled (notably the entire global cruise industry was suspended roughly one week after the Costa Luminosa sailing).  Despite knowing full well of the tremendous risk faced by all the passengers (and crew) aboard, Defendant Costa set sail.  For this reason and those further stated herein,  Plaintiff and others similarly situated have contracted the coronavirus and/or are now at an actual risk of immediate physical injury and death proximately caused by Defendant Costa's negligence.

**Factual Allegations Surrounding the Coronavirus Outbreak on the *Costa Luminosa* Voyages**

16.     On February 24, 2020, passengers embarked on the *Costa Luminosa* in Fort Lauderdale, Florida*,* which for some passengers would be a 30-day cruises with the *Costa Luminosa* returning to Fort Lauderdale, Florida on March 5, 2020.

17.     On February 29, 2020, a 68-year-old Italian passenger was evacuated from the *Costa Luminosa* in the Cayman Islands following symptoms of the coronavirus and a stroke. This passenger tested positive for the coronavirus and eventually died as a result.

18.      On March 4, 2020, at 8:45PM, the night before the *Costa Luminosa* was set to sail for another cruise, Costa sent the below email to prospective passengers, informing them that the alert level for COVID-19 declared by the World Health Organization had been raised leading to the health authorities of some countries to further increase their precautionary measures by introducing a series of bans on entry into their territories; and as a result Costa "remains in constant contact with all the local authorities of the countries called by its vessels . . . to allow Costa to make the **most** appropriate decisions and put in place the **most** adequate measures to be sure that the highest level of safety for its guests and crewmembers are met." As such, Costa represented to its passengers that it was holding itself to the **highest standard of care** for passengers based on the COVID-19 pandemic. A copy of such email is shown below:

Date: Wed, Mar 4, 2020 at 8:45 PM
Subject: URGENT: Upcoming Cruise Notification
To: <swatcfi@gmail.com>

**IMPORTANT COMMUNICATION**



**Costa Luminosa - Cruise from 03/05/2020**

Booking Number: 26522631  Emilio Hernandez

Dear Guest,

As you may have learned, the alert level for CoVid-19 declared by the World Health Organization has been raised, and this has led the health authorities of some countries to further increase their precautionary measures by introducing a series of bans on entry into their territories.

With the main aim to gain the most up-to-date information, Costa Cruises remains in constant contact with all the local authorities of the countries called by its vessels. This is done to allow Costa to make the most appropriate decisions and/or put in place the most adequate measures to be sure that the highest level of safety for its guests and crewmembers are met. Safety, in fact, is an absolute priority for us, both during navigation and on land.

19.     On March 5, 2020, in the morning, the *Costa Luminosa* arrived back in Fort Lauderdale, Florida from its previous voyage—the same voyage where the 68-yeard-old Italian Passenger was evacuated due to symptoms of the coronavirus.  Within just a few hours, Costa allowed new passengers to board the ship without adequately sanitizing the *Costa Luminosa*, including, but not limited to, incorporating UV lights into the filtration systems and/or antimicrobial sanitizing equipment. In addition, Costa did not have a third-party indoor environmental professional verify that common use areas and surfaces of the vessel were reasonable safe for passengers and/or crewmembers.

20.     Before boarding the *Costa Luminosa* on March 5, 2020, passengers contacted Costa over their concerns of the vessel's safety surrounding the coronavirus. Costa assured passengers its vessel was not affected by the coronavirus, was safe, and that there was no need for concern. In addition, Costa instructed passengers that they would *not* be reimbursed if they cancelled their March 5, 2020 voyage on the *Costa Luminosa*.

21.     Relying on Costa's assurances, passengers embarked on the *Costa Luminosa* on March 5, 2020 for a transatlantic cruise. Puerto Rico was scheduled to be the first port-of-call on March 8, 2020, before the *Costa Luminosa* would sail across the Atlantic Ocean for seven days. However, Costa failed to inform passengers at any time prior to boarding and/or while they were on board the *Costa Luminosa* that there was a significantly increased  risk of exposure to COVID-19. If passengers were made aware of this significantly increased risk of exposure prior to boarding the ship in Fort Lauderdale, Florida, they would have never boarded the *Costa Luminosa*, and/or never contracted COVID-19.

22.     In late 2019, the CDC published the Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019, which provided guidance for ships, including cruise ships, originating

from, or stopping in, the United States to help prevent, detect, and medically manage suspected COVID-19 infections. In regards to managing sick passengers or crew when boarding and onboard, the CDC states: "Deny boarding of a passenger or crew member who is suspected to have COVID-19 infection based on signs and symptoms plus travel history in China or other known exposure at the time of embarkation." *See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

23.    Before boarding the *Costa Luminosa*, Costa failed to deny boarding to passengers and/or crewmembers who showed symptoms of the coronavirus and/or travel history in China or other known exposure at the time of embarkation, including but not limited to, Japan, Italy, and South Korea.

24.    During the boarding process on March 5, 2020, Costa had non-medical professionals determine whether prospective passengers were medically fit to board based on a prospective passenger's answers to whether they were sick and/or experiencing symptoms of the coronavirus.

25.    During the voyage, as should have been anticipated, a coronavirus outbreak occurred on the *Costa Luminosa*. The outbreak was considered so severe that the *Costa Luminosa* was denied entry to multiple different ports-of-call by the government of the respective countries due to how contagious, novel, and deadly the coronavirus is.

26.    On March 8, 2020, the *Costa Luminosa* docked in Puerto Rico, and an elderly Italian couple was rushed from the vessel to a hospital on shore in Puerto Rico due to symptoms of the coronavirus. This elderly couple came from, and were residents of, northern Italy where the coronavirus outbreak in Italy initiated and where it escalated the worst in Italy. The coronavirus outbreak necessitated a total lockdown in Italy the same day the elderly couple was rushed to the

hospital upon arriving in Puerto Rico with symptoms of the coronavirus. Costa, either knowingly or negligently, failed to inform passengers that a passenger disembarked in Puerto Rico as a result of the coronavirus.

27.     Remarkably, on this same, March 8, 2020, the CDC expressly warned "**U.S. citizens, particularly travelers with underlying health conditions, should not travel by cruise ship**." Passengers aboard the vessel were not advised of this warning and were not given an opportunity to leave the ship.  Instead, they were dragged across the Atlantic in a ticking coronavirus time bomb.

28.     Before arriving in Antigua, the *Costa Luminosa's* next scheduled port-of-call, the *Costa Luminosa* was denied entry due to concerns of the coronavirus after Costa submitted its Maritime Health details—concerning passenger and crewmember's health status—to the government of Antigua and Barbuda.

29.     If passengers were made aware of this significantly increased  risk of exposure prior to leaving Puerto Rico, they would of disembarked the *Costa Luminosa* in Puerto Rico on March 8, 2020.  Instead, passengers were trapped on the vessel, and at an actual and significantly increased risk of exposure to the coronavirus, while it sailed across the Atlantic Ocean for seven days.

30.     Costa knowingly and intentionally decided to sail the *Costa Luminosa* across the Atlantic Ocean for seven days to the Canary Islands, knowing at least two passengers who disembarked its ship had symptoms of the coronavirus.

31.     During its transatlantic sailing from Puerto Rico to the Canary Islands, Costa was informed that the man who disembarked the vessel on February 29, 2020, with symptoms of the coronavirus had tested positive for the coronavirus. In addition, Costa was informed that the elderly couple with symptoms of the coronavirus who disembarked in Puerto Rico on March 8, 2020, tested

positive for coronavirus. Costa waited nearly a day to inform passengers that the aforementioned passengers tested positive for the coronavirus. During and after this revelation, Costa did not instruct passengers to isolate and/or quarantine to avoid the known and significant actual risk of contracting the coronavirus as passengers were allowed unfettered access to the pools, gym, and buffets the entire time, which further put passengers at an actual risk of exposure to coronavirus. Costa's actions and/or omissions were in direct violation of CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019, revised on February 18, 2020. Again, Costa failed to inform passengers that there was a significantly increased and actual risk of exposure to coronavirus on board the vessel.

32.     In regards to managing passengers and crew after exposure, the CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019 states:

> "Passengers and crewmembers who have had high-risk exposures to a person suspected of having COVID-19 should be quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members should self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure."

*See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

33.     Costa falsely assured passengers on the *Costa Luminosa* that the vessel was "equipped with medical facilities with dedicated staff, available 24 hours a day," in a letter sent provided to passengers in their stateroom on March 9, 2020. However, Plaintiff Paul Turner and other passengers went to visit the ship's medical facility only to find out it was only open between 8:30AM to 11:00AM, and 5:00PM to 8:00PM. As a result, Plaintiff and others similarly situated reasonably feared the vessel would not be able to handle medical issues as they arose, and certainly not able to handle the outbreak of the coronavirus onboard.

34.     On March 13, 2020, the Governor of Puerto Rico confirmed its first coronavirus cases, which were the Italian couple who disembarked the *Costa Luminosa* on March 8, 2020. *See* The Associated Press, *Puerto Rico Announces its First Confirmed Coronavirus Cases*, ABC NEWS, (published March 13, 2020), [https://abcnews.go.com/Health/wireStory/puerto-rico-announces-confirmed-coronavirus-cases-69593953](https://abcnews.go.com/Health/wireStory/puerto-rico-announces-confirmed-coronavirus-cases-69593953).

35.     However, **Costa waited nearly a whole day before informing passengers that the couple who disembarked in Puerto Rico tested positive for COVID-19**. On March 14, 2020, at around 11:50PM, Costa slid the following letter under passenger's stateroom doors:



3|14|20
2350 Hrs.

Costa Luminosa, March 14th 2020

Dear Guests,

We hope that despite the challenging situation we all have been going through during these days, you appreciate our level of service as well as our personal touch which is aimed at providing you with the best possible cruise experience.

As you know, at present Costa Luminosa is at sea in route towards Marseille and will perform a technical bunkering call in Tenerife.

We wish to inform you that We have been just informed that the guest who was disembarked on March 8 in Puerto Rico for medical reasons and her husband, in Puerto Rico, have been found positive to the COVID-19 virus and are both hospitalized. Since their disembarkation, as precaution, the close contacts of the guests have been isolated. Moreover, given the global pandemic in progress, the health and sanitization measures on board the ship had been already intensified, and now have been further raised to maximize your safety.

*Photograph courtesy of Costa Luminosa passenger, Emilio Hernandez.*

36.     During the voyage, Costa concealed information surrounding the coronavirus from passengers by blocking out news channels on stateroom TVs that had previously been available to passengers during the beginning of the cruise.  Remarkably, media outlets were reporting about the coronavirus issues on the *Costa Luminosa* **before** Costa was informing its passengers.

37.     During the voyage, on or about March 13, 2020, and while aboard the *Costa Luminosa*, additional passengers became severely ill with symptoms of the coronavirus, which was observed by crewmember(s).

38.     Costa failed to recognize the seriousness of the medical condition of the passengers showing symptoms of the coronavirus. Costa did not instruct passengers and/or crew members who had exposures to a person suspected of having COVID-19 and/or tested positive for COVID-19 to quarantine in their cabins as to avoid the known and significant actual risk of contracting the coronavirus because passengers were allowed unfettered access to the pools, gym, and buffets the entire time, which further put passengers at an actual risk of exposure to coronavirus. These actions and/or omissions by Costa were in direct violation of CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019, revised on February 18, 2020.

39.     On March 15, 2020, the *Costa Luminosa* arrived in the Canary Islands to unload three more passengers with symptoms of the coronavirus, However, Costa did not allow  other passengers off the vessel. This was the first day the crewmembers of the *Costa Luminosa* began wearing napkins over their mouths and using napkins to grab plates to deliver food into passenger's staterooms. Again, Costa did not inform and/or warn passengers that passengers on board the same voyage tested positive for the coronavirus.

40.     Finally, on the evening of March 15, 2020, the captain of the *Costa Luminosa* requested passengers to remain isolated in their staterooms. Costa's decision to recommend passengers to isolate in their cabin came two days after Costa was aware that the passenger who disembarked with symptoms of the coronavirus in Puerto Rico on March 8, 2020 tested positive for the coronavirus. The March 15, 2020 letter is shown below:



3.15-20
20:25 hrs.

Dear guests,

We would like to provide with updated information on our current situation on board.

In the last hours we have been supporting the local Health Authorities in conducting a thorough review of the health status of our guests and crew aboard Costa Luminosa. As you have recently been informed, two guests who recently disembarked have resulted in positive Covid-19 tests. The two guests are now hospitalized shoreside and reported to be in a stable condition.

Today we acknowledged that two guests have been encountering fever and breathing symptoms, we are currently working to grant them the transfer to the closet hospital unit. Due to the present situation we have decided to further implement precautionary measures to avoid any possible spread and to keep on our focus to the health and safety of all guests and crew.

As of now you are requested to stay in your cabin and, at the same time, to communicate any possible breathing and fever symptoms only calling the number 99 from your cabin's phone. As of this evening and until further notice all guests will be served meals in their cabins (menu will be delivered and dietary requirements respected) and will be requested to follow any further instructions. We would like to assure you we are putting in place all the sanitization initiatives and all the precautionary measures; at the same time your cooperation will be instrumental to further increase safety and health on board.

41.     On March 16, 2020, the captain of the *Costa Luminosa* advised passengers they would be forced to quarantine for the remainder of the cruise due to the outbreak on board the *Costa Luminosa*:

Costa

Costa Luminosa, March 16, 2020

Dear Guests,

Following our previous communications, please know that all available personnel on board Costa Luminosa remains at your service to try and make the following days as comfortable as possible, and that Costa Cruises will do everything in its power to facilitate your swift return home.

As you know, COVID-19 has now turned into a global pandemic - as declared by the World Health Organization - and this, along with the cases registered on board, has led to the decision of opting for this period of forced quarantine while sailing.

Costa Luminosa is currently sailing towards Marseille, after being denied disembarkation in Spain due to the decision of the Spanish authorities to close all ports as a measure to contain the spread of the virus.

42.     On March 19, 2020, the *Costa Luminosa* was allowed entry in Marseille, France to allow for disembarkation of passengers. When passengers were instructed to leave their staterooms to meet at disembarkation areas aboard the vessel for further directions, they were not provided with any protective equipment, such as adequate masks or gloves, and not directed to stay further than six feet apart, which further put passengers at an actual, heightened risk of exposure to the coronavirus. During the disembarkation process in Marseille, France, passengers, bunched in tight groups, were unloaded off the vessel and onto buses and held for hours before flights were arranged for passengers based on their country of residence. At this point, thirty-six of the seventy-five passengers tested positive for COVID-19.

43.     As a result of Defendant Costa's grossly negligent approach to the safety of the passengers on board the *Costa Luminosa*, its passengers and crew aboard the *Costa Luminosa* were at an actual risk of immediate physical injury and death.

44.     Consequently, thousands of passengers on the *Costa Luminosa* were subjected to the risk of contracting the highly contagious coronavirus as a result of Defendant Costa's failure to warn passengers at any time prior to boarding or while they were already onboard that there were other passengers with symptoms of the coronavirus, and Defendant Costa's grossly negligent approach to the safety of the passengers.

45.     As a result of Costa's actions and/or omissions, Plaintiff and others similarly situated were consequently forced to board a plane where they were further exposed to an actual risk of physical injury and forced to quarantine for over two weeks, some of which had high fevers, dry coughs, shortness of breath, and a serious risk of imminent death– all of which could have been easily avoided if simply given the choice to stay at home and reschedule the cruise and/or cancelled the subject cruise and/or implemented reasonable policies and procedures to prevent the spread of the highly contagious coronavirus.

46.     Costa's negligent misconduct was predicated on a profit motive because, simply put, cruise lines like Costa make no money when passengers don't sail.  Defendant Costa's knowing, intentional and reckless conduct subjects Costa to the imposition of punitive damages.  This voyage set sail knowing it was a virtual certainty that there would be an outbreak, similar, if not identical, to those which two Princess ships had already very publicly faced.  This callous disregard for the safety and well-being of its passengers must be answered for.

47.     To this precise point, Katelyn Gostic, a University of Chicago epidemiologist, stated the following on Costa's response with regards to the voyage(s) aboard the *Costa Luminosa*: "The cruise ship response was definitely lagging behind expert opinion on how big the risks are… It was sluggish decision-making, and they should have responded earlier." *See* Beth Reinhard, Rosalind S. Helderman, Faiz Siddiqui, and Mark Berman, *Cruise Ships Kept Sailing As*

*Coronavirus Spread. Travelers and Health Experts Question Why*, WASHINGTON POST, (last updated March 20, 2020), https://www.washingtonpost.com/politics/cruise-ships-kept-sailing-as-coronavirus-spread-travelers-and-health-experts-question-why/2020/03/20/5b640f14-67e2-11ea-b5f1-a5a804158597_story.html.

48.     Each and all of the foregoing conditions, including but not limited to, the actual risk of exposure to the coronavirus, were known to Costa prior to the time the *Costa Luminosa* set for sail on its voyage on March 5, 2020, and prior to leaving Puerto Rico on March 8, 2020, with Paul Turner and all other passengers similarly situated. Defendant Costa subjected over 2,000 passengers to the highly contagious coronavirus, and exposed passengers to actual risk of immediate physical injury and death due to its (a) knowing and intentional decision to proceed with a transatlantic 20-day cruise on March 5, 2020, knowing at least one of its passengers from the prior voyage who disembarked February 29, 2020 had symptoms of coronavirus; (b) knowing and intentional decision to conceal from passengers that a passenger on the subject voyage had symptoms of coronavirus, and did not inform passengers until after the day the *Costa Luminosa* docked in Puerto Rico—the last chance passengers had to disembark before being stuck on the *Costa Luminosa* for a full week while sailing across the Atlantic Ocean with severely limited medical personnel and supplies; and (c) knowing and intentional decision to wait two days to order passengers to isolate in their staterooms after being informed that the passengers who disembarked in Puerto Rico with symptoms of coronavirus tested positive.

## CLASS ACTION ALLEGATIONS

49.     This action is brought by Plaintiff on his own behalf, and on behalf of all others similarly situated, under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

50.     The class so represented by the Plaintiff in this action, and of which Plaintiff is a member, consists of all passengers aboard the *Costa Luminosa* cruises on February 24, 2020, and/or March 5, 2020.

51.     The class of passengers were subjected to severe distress both physical, psychological and emotional; endured pain and suffering, along with physical and emotional injury as a result of Defendant Costa's negligence and/or gross negligence and/or intentional conduct.

52.     The exact number of members of the class is unknown at this time, but it is estimated that there are in excess of 2000 members. The class is so numerous that joinder of all members is impracticable. This action satisfies the requirements of Rule 23(a)(1).

53.     There are common questions of law and fact that relate to and effect the rights of each member of the class and the relief sought is common to the entire class. The same misconduct on the part of Defendant Costa caused the same or similar injury to each class member.  All class members seek damages under the general maritime law of the United States for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress and Negligence. Accordingly, this action satisfies the requirement of Rule 23(a)(2).

54.     The claims of Plaintiff are typical of the claims of the class, in that the claims of all members of the class, including Plaintiff, depend upon a virtually identical showing of the acts and omissions of Defendant Costa, giving rise to the right of Plaintiff to the relief sought herein. Defendant Costa was at all times material hereto engaged in the same conduct to the detriment of the entire class of Plaintiffs. Accordingly, this action satisfies the requirements of Rule 23(a)(3).

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

55.     Plaintiff is the representative party for the class, and is able to, and will, fairly and adequately protect the interests of the class. There is no conflict between Plaintiff and other members of the class with respect to this action, or with respect to the claims for relief herein. The attorneys for Plaintiff are experienced and capable in the field of maritime claims for cruise ship passenger injury, including class actions, and have successfully represented claimants in other litigation of this nearly exact nature.  Two of the attorneys designated as counsel for Plaintiff, Jason R. Margulies (Florida Bar Board Certified in Admiralty and Maritime Law) and Michael A. Winkleman, will actively conduct and be responsible for Plaintiff's case herein. Accordingly, this action satisfies the requirement of Rule 23(a)(4).

56.     This action is properly maintained as a class action under Rule 23(b)(3) inasmuch as questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.  In support of the foregoing, Plaintiff alleges that common issues predominate and can be determined on a class-wide basis regarding Costa's failure to exercise reasonable care under the circumstances, by *inter alia*, (a) deciding to proceed with a transatlantic 20-day cruise on March 5, 2020, knowing at least one of its passengers from the prior voyage who disembarked February 29, 2020 had symptoms of coronavirus; (b) deciding to conceal from passengers that a passenger on the *Costa Luminosa* had symptoms of coronavirus, and did not inform passengers until after the day the *Costa Luminosa* docked in Puerto Rico—the last chance passengers had to disembark before being stuck on the *Costa Luminosa* for a full week while sailing across the Atlantic Ocean with severely limited medical personnel and supplies; and (c) deciding to wait two days to order passengers to isolate in their staterooms after being informed two days before that passengers who disembarked in Puerto Rico with symptoms of coronavirus

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

tested positive for such.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is unlikely that individual plaintiffs would assume the burden and the cost of this complex litigation, and Plaintiff is not aware of any class members who are interested in individually controlling the prosecution of a separate action. The interests of justice will be served by resolving the common disputes of the class members with Costa in a single forum, and individual actions by class members, many of whom are citizens of different states would not be cost effective. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

58.     Costa's passenger ticket contract contains a provision which attempts to limit its passengers' right to file their claims against Costa as a class action, but said provision is void because such an attempt by Costa to limit its liability to passengers violates 46 U.S.C. 30509.[1] *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335–36 (11th Cir. 1984). Additionally, the provision should be deemed null and void as Costa acted intentionally[2] by exposing passengers to a highly contagious virus, which has no current confirmed vaccine nor effective treatment. This similar class waiver contractual provision has been upheld by other decisions in this district, but this action seeks, in good faith, the extension of modification of existing law. Importantly, the Eleventh Circuit Court of Appeals has *not* ruled on the enforceability of said contract.

---

[1] § 30509(a)(1)(A) states: "The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting [...] the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents."

[2] "[C]ontractual exculpatory clauses absolve the exculpated party only from ordinary negligence and should not be construed to include loss or damage resulting from intentional or reckless misconduct, gross negligence, or the like." *In re New River Shipyard, Inc.*, 355 B.R. 894, 904 (Bankr. S.D. Fla. 2006)

## COUNT I – NEGLIGENCE AGAINST ALL DEFENDANTS

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through fifty-eight (58) as though alleged originally herein and further alleges:

59.     It was the duty of Defendant Costa to provide Plaintiff and all others similarly situated with reasonable care under the circumstances.  Additionally, and/or Alternatively, Defendant Costa voluntarily assumed a heightened (or "highest") duty of care to its passengers (See paragraph 18.).

60.     Costa and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances.

61.     Plaintiff was injured due to the fault and/or negligence of Defendant Costa, and/or its agents, servants, and/or employees as follows:

    a.  Failure to use reasonable care to provide and maintain a safe voyage for Paul Turner and others similarly situated, fit with proper and adequate safety, protection, cleaning products and equipment, especially during a known and escalating, global pandemic of the coronavirus, and when a prior passenger showed symptoms of the coronavirus, and care; and/or

    b.  Failure to adequately warn passengers before boarding the vessel that a passenger on a prior cruise showed symptoms of the coronavirus; and/or

    c.  Failure to warn passengers of the dangers and risks of the coronavirus and/or infectious disease, including, but not limited to, failing to inform the passengers of the extent of the prior outbreaks and/or risks and/or symptoms; and/or

    d.  Failure to adequately warn passengers before boarding the vessel that the vessel's medical facility, including the medical personnel, equipment, and supplies, would not be able to adequately handle a coronavirus outbreak

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M

onboard the *Costa Luminosa*, especially while crossing the Atlantic Ocean and knowing that countries are refusing the vessel's entrance and passenger with symptoms to come onshore; and/or

e.  Failure to adequately warn passengers on the subject voyage aboard the *Costa Luminosa* that during the voyage a passenger showed symptoms of the coronavirus and/or came from an area (Italy) before boarding the vessel that was experiencing a massive outbreak of the coronavirus and placed on a lockdown by the government due to the severity of the coronavirus; and/or

f.  Failure to adequately examine a passenger's and/or crewmember's health condition before allowing them to board the vessel; and/or

g.  Failure to have adequate medical personnel during the boarding process to determine whether to allow boarding to passengers and/or crewmembers; and/or

h.  Failure to have adequate medical personnel to determine whether to allow boarding to passengers and/or crewmembers in accordance with CDC guidelines; and/or

i.  Failure to adequately sanitize and/or disinfect the vessel's common areas and passenger's cabin; and/or

j.  Failure to adequately sanitize and/or disinfect plates, cups, food trays, utensils, ice machines and drinking fountains; and/or

k.  Failure to quarantine passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

l.  Failure to quarantine passengers and/or crewmembers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of

a virus and/or an infectious disease; and/or

m. Failure to provide prompt, proper, and adequate medical treatment to passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

n. Failure to serve uncontaminated food; and/or

o. Failing to practice safe and sanitary food practices; and/or

p. Failure to adequately and properly eradicate the coronavirus or some other virus causing illness to passengers on the *Costa Luminosa*; and/or

q. Failure to take adequate steps to prevent an outbreak of the coronavirus and/or virus and/or infectious disease when it knew or should have known that such outbreaks had occurred on prior cruise voyages; and/or

r. Failure to take adequate medical precautions when a passenger is exhibiting symptoms of the coronavirus and/or virus and/or infectious disease so that it can be timely diagnosed; and/or

s. Failure to perform testing on ill passengers to confirm the type and nature of the virus; and/or

t. Failure to have adequate policies and procedures in place to manage and contain the outbreak and spread of the coronavirus and/or virus and/or infectious disease; and/or

u. Failure to provide a sanitary vessel to prevent outbreaks of the coronavirus and/or virus and/or infectious diseases, including, but not limited to, inadequate and/or ineffective cleaning/sanitary procedures and/or lack of equipment and supplies; and/or

v.  Failure to take adequate steps to contain the spread of the coronavirus and/or virus and/or infectious diseases, which it knew or should have known could cause other dangerous medical conditions; and/or

w.  Knowingly refusing to cancel and/or offer refunds to passengers as a result of a passenger on a prior cruise showing symptoms of coronavirus and having to be medically disembarked; and/or

x.  Failing to have proper policies and procedures in place to determine whether to offer refunds as a result of the risk of exposing passengers and crew to the highly contagious coronavirus due to a passenger on a prior cruise showing symptoms of coronavirus; and/or

y.  Failing to cancel the voyage and/or offer refunds despite knowing a passenger on a prior voyage showed symptoms of the coronavirus and despite knowing that multiple prior similarly situated voyages ended in widely publicized catastrophe; and/or

z.  Failure to reasonably offer refunds to passengers not wishing to travel on a vessel that had a passenger from a previous voyage showing symptoms of the coronavirus; and/or

aa. Exposing passengers to unsanitary conditions that they were unprepared for without proper warning from Costa; and/or

bb. Failure to provide adequate training, instruction, and supervision to the Costa employees; and/or

cc. Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

dd. Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an outbreak of a virus and/or infectious disease, including , but not limited to, the coronavirus; and/or

ee. Failure to determine and/or appreciate the hazards associated with allowing passengers to congregate within close distances, including within six feet, in common areas of the vessel; and/or

ff. Knowing, as a result of previous similar incidents and/or passengers showing symptoms of the coronavirus, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

gg. Failure to amend its cancellation policy to allow the passengers to cancel their cruise without financial penalty in light of a passenger from a previous voyage showing symptoms of the coronavirus and/or the significant actual risk due to the coronavirus global pandemic;

hh. Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

62. The above acts and/or omissions caused and/or contributed to Plaintiff and others similarly situated contracting the coronavirus and/or other virus and/or medical complications arising from it because the Plaintiff and others similarly situated would not have boarded the vessel knowing that a passenger on the prior voyage was disembarked for symptoms of the coronavirus had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated

the foregoing to Plaintiff and others similarly situated.

63. In addition, the above acts and/or omissions caused and/or contributed to Plaintiff and others similarly situated contracting the coronavirus and/or other virus and/or medical complications arising from it because the Plaintiff and others similarly situated would have disembarked the vessel in Puerto Rico knowing that a passenger on the subject voyage was disembarked in Puerto Rico for symptoms of the coronavirus had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to Plaintiff and others similarly situated.

64. The above acts and/or omissions caused and/or contributed to the Plaintiff and others similarly situated contracting the coronavirus and/or other virus and/or medical complications arising from it because the coronavirus and/or other virus outbreak would not have occurred but for Defendant's failure to adequately sanitize the vessel in a reasonably safe condition.

65. At all material times, Defendant Costa had exclusive custody and control of the vessel, *Costa Luminosa*.

66. Defendant knew of the foregoing conditions causing Plaintiff and others similarly situated to be exposed to an actual risk of physical injury and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

67. As a result of the negligence of Costa, Plaintiff and others similarly situated were:

a. exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M

difficulties; and/or

b. contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff and others similarly situated will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff and others similarly situated demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## <u>COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>

## <u>AGAINST ALL DEFENDANTS</u>

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through fifty- eight (58) as though alleged originally herein and further allege:

68. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiff and all others similarly situated were placed in an immediate risk of physical harm. Said risk of physical harm included but is not limited to: contracting the coronavirus and/or virus and/or medical complications arising from it and/or injury and/or death

and/or severe emotional and/or psychological trauma.

69.     Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiff and all others similarly situated, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties.

70.     Plaintiff and those similarly situated was/were forced to remain on a vessel that had multiple passengers that tested positive of coronavirus and were on the vessel for multiple days, and were then forced to disembark the vessel in tight groups, creating a an actual risk of exposure to coronavirus, causing a reasonable fear of great bodily harm and death. At all times material, all similarly effected passengers were in the zone of danger at risk of serious bodily harm, including death due to, *inter alia*, the highly contagious coronavirus, which had and has no vaccine.

71.     Plaintiff and those similarly situated ticketed aboard the *Costa Luminosa* were placed in the zone of danger as a result of Costa's dangerously lackadaisical approach in dealing with the coronavirus that was known to be on board the vessel via passengers that tested positive for the coronavirus.  Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

72.     Plaintiff's and others similarly situated fear of death and experience of mental, emotional and/or physical harm was genuine and well founded and Plaintiff and others similarly situated suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of Costa. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiff and others similarly situated, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

73. As a result of the negligent inflection of emotional distress by Costa, Plaintiff and others similarly situated were:

    a.  exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

    b.  contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff and others similarly situated will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff and others similarly situated demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST

## ALL DEFENDANTS

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through fifty-eight (58) as though alleged originally herein and further allege:

74. As set forth above, the actions of Costa were intentional or reckless and inflicted mental suffering. Costa's conduct in (a) deciding to proceed with a transatlantic 20-day cruise on March 5, 2020, knowing at least one of its passengers from the prior voyage who disembarked February 29, 2020 had symptoms of coronavirus; (b) deciding to conceal from passengers that a passenger on the subject voyage had symptoms of coronavirus, and did not inform passengers until after the day the *Costa Luminosa* docked in Puerto Rico—the last chance passengers had to disembark before being stuck on the *Costa Luminosa* for a full week while sailing across the Atlantic Ocean with severely limited medical personnel and supplies; and (c) deciding to wait two days to order passengers to isolate in their staterooms after being informed two days before that passengers who disembarked in Puerto Rico with symptoms of coronavirus tested positive for such, was outrageous. This conduct is made more outrageous by the fact that this conduct was motivated by Costa's desire to make profit rather than ensure the reasonable safety and welfare of its passengers.

75. Costa's conduct caused the Plaintiff and others similarly situated, and all those similarly situated, to suffer through the fearful conditions alleged above.

76. All of the conditions previously alleged and endured by the Plaintiff and others similarly situated caused severe suffering and emotional distress as these conditions not only led to immediate risk of physical harm but also caused severe discomfort, anxiety, feelings of helplessness/hopelessness as the passengers battled the violent storm.

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

77.     The conduct of Costa as alleged above is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Put simply, Costa recklessly and intentionally put thousands of its passengers through a living nightmare so it could protect its bottom line.

78. As a result of the intentional inflection of emotional distress by Costa, Plaintiff and all those similarly situated were:

   a.  exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

   b. contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff and others similarly situated will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff and others similarly situated demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## COUNT IV - MISLEADING ADVERTISING IN VIOLATION OF
## FLORIDA STATUTE § 817.41

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through fifty-eight (58) as though alleged originally herein and further alleges:

79. On March 4, 2020, Costa made representations via email to prospective passengers which represented to prospective passengers that, with regard to COVID-19, Costa would "make the most appropriate decisions and put in place the most adequate measures to be sure that the highest level of safety for its guests and crewmembers are met" (see paragraph 18).

80. In Costa's March 4, 2020 email to prospective passengers, Costa misrepresented the following:

    a. That Costa would make the most appropriate decisions regarding COVID-19; and/or

    b. That Costa would put in place the most adequate measures regarding COVID-19; and/or

    c. That Costa would ensure that the highest level of safety for its guests and crewmembers are met regarding COVID-19.

81. Pursuant to Florida Statute § 817.41(4), Costa is responsible for the foregoing false and/or misleading advertisements because Costa was named in and/or obtained the benefits of the statements and/or advertisements.

82. At all times material hereto, the foregoing statements Costa made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading.

83. At all times material hereto, the statements were so made or disseminated by Costa with the intent or purpose, either directly or indirectly, of inducing passengers to rely on the statements and act by purchasing tickets and/or going on the subject cruise on March 5, 2020.

84. At all times material hereto, Plaintiff justifiably relied on the representations made by Costa when Plaintiff decided to board the *Costa Luminosa* on March 5, 2020.

85. As a result thereof, Plaintiff and others similarly situated were:

    a.  exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

    b.  contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff and others similarly situated will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff and others similarly situated demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

### COUNT V - NEGLIGENT MISREPRESENTATION

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through fifty-eight (58) as though alleged originally herein and further alleges:

86. On March 4, 2020, Costa made representations via email to prospective passengers which represented to prospective passengers that, with regard to COVID-19, Costa would "make the most appropriate decisions and put in place the most adequate measures to be sure that the highest level of safety for its guests and crewmembers are met" (see paragraph 18).

87. In Costa's March 4, 2020 email to prospective passengers, Costa misrepresented the following:

   a. That Costa would make the most appropriate decisions regarding COVID-19; and/or

   b. That Costa would put in place the most adequate measures regarding COVID-19; and/or

   c. That Costa would ensure that the highest level of safety for its guests and crewmembers are met regarding COVID-19.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

88. At all times material hereto, the foregoing statements Costa made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading.

89. At all times material hereto, Plaintiff justifiably relied on the representations made by Costa when Plaintiff decided to board the *Costa Luminosa* on March 5, 2020.

90. As a result thereof, Plaintiff and others similarly situated were:

   a.  exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

   b.  contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff and others similarly situated will suffer the losses and impairments in the future.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

**WHEREFORE**, the Plaintiff and others similarly situated demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

**DATED April 7, 2020**

Respectfully submitted,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiffs*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: */s/ Michael Winkleman*
    **MICHAEL A. WINKLEMAN**
    Florida Bar No. 36719
    mwinkleman@lipcon.com
    **JASON R. MARGULIES**
    Florida Bar No. 57916
    jmargulies@lipcon.com
    **MARC E. WEINER**
    Florida Bar No. 91699
    mweiner@lipcon.com
    **DANIEL W. GRAMMES**
    Florida Bar No. 1010507
    dgrammes@lipcon.com
    *Counsel for Plaintiffs*